211 P.3d 1161

**In re MH 2008–001188.**

**No. 1 CA–MH 08–0033.**

Court of Appeals of Arizona,
Division 1, Department B.

March 26, 2009.

James J. Haas, Maricopa County Public Defender, by Tennie B. Martin, Deputy Public Defender, Phoenix, for Appellant.

Andrew P. Thomas, Maricopa County Attorney, by Anne C. Longo, Deputy County Attorney, Phoenix, for Appellee.

## OPINION

DOWNIE, Judge.

¶ 1 Appellant challenges the superior court's determination that she was unwilling or unable to accept voluntary mental health treatment. She also contends that documentation submitted by the evaluating physicians failed to comply with statutory requirements because it did not specifically allege that she was unwilling or unable to accept voluntary

treatment. Finally, appellant claims that the superior court failed to make necessary findings on the record. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

### I. Petition for Court–Ordered Evaluation

¶2 On May 27, 2008, Mary Krolik, M.D., petitioned the superior court for an involuntary mental health evaluation of Appellant. Dr. Krolik found reasonable cause to believe that Appellant was a danger to herself and that she had refused voluntary evaluation at the Psychiatric Recovery Center ("PRC"). According to the petition, Appellant's family reported three suicide attempts within the past week.

¶3 Along with Dr. Krolik's petition, Yvette Y., Appellant's cousin, submitted applications for involuntary evaluation and emergency admission for evaluation. According to Yvette, Appellant had communicated a desire to harm herself and had recently made suicide attempts, including an overdose of pills, two separate strangulation attempts, and efforts to jump from a moving vehicle. Yvette reported that Appellant had refused a voluntary evaluation and did not recognize that she needed treatment. She also stated that Appellant had threatened future suicide attempts and had said she would "take people out" if she had a gun.

### II. Petition for Court–Ordered Treatment

¶4 On May 30, 2008, Thomas Cyriac, M.D., deputy medical director at the Maricopa Medical Center, filed a petition for court-ordered treatment. Dr. Cyriac alleged that Appellant was persistently or acutely disabled and a danger to self. He stated that Appellant was unwilling or unable to accept treatment voluntarily and requested that she receive combined inpatient and outpatient treatment.

¶5 In an affidavit accompanying the petition, Dr. Cyriac stated that Appellant minimized her conduct and symptoms. He noted that Appellant had been diagnosed with bipolar disorder and had received treatment and mood stabilizers in the past. Dr. Cyriac found that Appellant had engaged in behaviors of significant danger to self. She vaguely admitted to suicide attempts, her insight was questionable, and her "behavior clearly reflects poor judgment." Dr. Cyriac concluded that, "given her current level of symptoms, she would benefit from close, frequent monitoring on an inpatient basis."

¶6 Joel Badeaux, M.D., also evaluated Appellant and submitted an affidavit stating that she was a danger to herself and others. Dr. Badeaux noted that Appellant showed symptoms of "mood disorder, including irritability, depressed mood, anhedonia, psychomotor agitation, feelings of worthlessness, difficulty concentrating, and recurrent suicidal ideation." When asked about events leading up to her hospitalization, Appellant stated, "I was threatening my cousin. I was drunk. It's just something that comes out." She admitted to three overdose attempts over a period of weeks and stated that she showed her family a noose and threatened to hang herself because they threatened to "dump out my liquor." Appellant further admitted telling her mother that, if she had a gun, she would try to kill herself and her mother, but stated, "I was saying that metaphorically." She blamed her actions on alcohol use and expressed a willingness to accept inpatient treatment for substance abuse. She also admitted a long history of self-inflicted cutting and heroin use. Dr. Badeaux opined that outpatient treatment was not appropriate based on the severity of Appellant's symptoms and her recent behaviors. He recommended inpatient treatment on an involuntary basis.

¶7 The superior court issued a detention order for treatment and a notice of hearing.

### III. Hearing on Contested Petition

¶8 At the hearing on June 9, 2008, counsel stipulated to the admission of the doctors' affidavits and addenda in lieu of their testimony. Appellant's mother, Adelia B., testified that Appellant had recently tried to hang herself twice and had taken an overdose of sleeping pills. On one occasion, Adelia had to cut a cord from around Appellant's neck because it was wound so tightly. Appellant told Adelia that she would "rather die than continue with her ... mental pain." Adelia

stated that Appellant's drinking was increasing because she "didn't want to live." Appellant had willingly gone to Mohave Mental Health with Adelia once or twice a month for a few months for treatment. In addition, Appellant had voluntarily accepted treatment for substance abuse in the past.

¶ 9 Yvette testified that, during a trip to Phoenix, Appellant said that "she didn't think anybody loved her" and that "she wanted to jump out of the car while it was moving." Appellant tried to unlock the car door and open it while they were traveling on the highway. Yvette stated that Appellant agreed to go to PRC, but upon arrival, she made a scene and walked out. PRC advised Yvette to take Appellant to the emergency room.

¶ 10 Appellant testified that she had been in the hospital for a couple of weeks prior to the hearing and that she was on medication that was helping. Prior to this, she had been seeing a drug counselor and psychiatrist in Mohave County on an as-needed basis, but they did not have her on any medications. Appellant testified that she has a history of drug abuse, though she took methadone to wean herself from heroin. Appellant admitted drinking alcohol to excess, stating that she drinks alcohol every day "[f]rom the moment I wake up." She denied trying to overdose on pills, stating that she had only taken two sleeping pills with alcohol because she was having difficulty sleeping.

¶ 11 The superior court found by clear and convincing evidence that Appellant, as a result of a mental disorder, was a danger to self and persistently and acutely disabled. It ordered involuntary treatment in a combined inpatient-outpatient program for 365 days. At the hearing, the court remarked that the "current medication regimen seems to be working wonders" and that Appellant "does seem to be cooperative at this point, although her stability is questionable." The court found that there were no appropriate and available alternatives to court-ordered treatment. The transcript does not reflect that the superior court specifically stated at the hearing that Appellant was "unwilling or unable to accept voluntary treatment." However, the ensuing order for treatment and the

minute entry from the hearing both include such a finding.

¶ 12 Appellant filed a timely notice of appeal. We have jurisdiction pursuant to Arizona Revised Statutes ("A.R.S.") section 36–546.01 (2003).

## DISCUSSION

¶ 13 Appellant alleges that the physicians' "persistent or acutely disabled" addenda failed to comply with statutory requirements because they did not specifically allege that she was unwilling or unable to accept voluntary treatment. She also argues that she demonstrated a willingness and ability to comply with voluntary treatment. Finally, Appellant contends that the order for involuntary treatment was invalid because the court never actually found, on the record, that she was unwilling or unable to accept voluntary treatment.

¶ 14 We will affirm the superior court's order for involuntary treatment if it is supported by substantial evidence. *Appeal in Pima County Mental Health Serv. Action No. MH–1140–6–93*, 176 Ariz. 565, 566, 863 P.2d 284, 285 (App.1993). We view the facts in the light most favorable to sustaining the trial court's judgment and will not set aside the related findings unless they are clearly erroneous. *In re Appeal in Maricopa County of Mental Health Case No. MH 94–00592*, 182 Ariz. 440, 443, 897 P.2d 742, 745 (App. 1995).

¶ 15 After a hearing, the superior court may order a person to undergo involuntary treatment in a combined inpatient and outpatient program if it finds by clear and convincing evidence that the person, as a result of a mental disorder, is persistently or acutely disabled and is either unwilling or unable to accept voluntary treatment. A.R.S. § 36–540(A)(2) (2003). "Persistently or acutely disabled" is defined as a severe mental disorder that meets all three of the following criteria:

(a) If not treated has a substantial probability of causing the person to suffer or continue to suffer severe and abnormal mental, emotional or physical harm that

significantly impairs judgment, reason, behavior, or capacity to recognize reality.

(b) Substantially impairs the person's capacity to make an informed decision regarding treatment and this impairment causes the person to be incapable of understanding and expressing an understanding of the advantages and disadvantages of accepting treatment and understanding and expressing an understanding of the alternatives to the particular treatment offered after the advantages, disadvantages and alternatives are explained to that person.

(c) Has a reasonable prospect of being treatable by outpatient, inpatient or combined inpatient and outpatient treatment.

A.R.S. § 36–501(33).[1] Under the statute, an individual's current behavior "is neither the sole nor the essential indication of the statutory criteria." *MH 94–00592*, 182 Ariz. at 444, 897 P.2d at 746. Treatment history and past behavior are also relevant. *Id.*

¶ 16 Appellant contends that the evaluating doctors' "persistently or acutely disabled" addenda were legally insufficient because they did not allege that she was unwilling or unable to accept voluntary treatment. We disagree.

¶ 17 Arizona statutes do not require the examining physicians' affidavits and addenda to allege that a person is unable or unwilling to accept voluntary treatment. Pursuant to A.R.S. § 36–533(B), those affidavits must describe "in detail" the behavior indicating that the person is persistently or acutely disabled as a result of a mental disorder. The statute, however, does not mandate that the evaluating physicians allege that the patient is unable or unwilling to accept voluntary treatment. In contrast, A.R.S. § 36–533(A)(3) specifically requires that the *petition* for court-ordered treatment allege that "the patient is unwilling to accept or incapable of accepting treatment voluntarily." Dr. Cyriac's petition complied with this statutory requirement.

¶ 18 Before the superior court can order involuntary treatment, it must find, by clear and convincing evidence, based on the record before it, that the patient "is either unwilling or unable to accept voluntary treatment." A.R.S. § 36–540(A). Thus, the court must have evidence upon which to base a determination that a person is unable or unwilling to accept voluntary treatment. That evidence, however, need not come from the examining physicians' affidavits or addenda.

¶ 19 In the case at bar, there was substantial evidence that Appellant was unwilling or unable to accept voluntary treatment. Drs. Cyriac and Badeaux stated that Appellant did not recognize that her psychiatric condition was severe and demanded a higher level of care than she was voluntarily receiving. Dr. Cyriac opined that Appellant's lack of impulse control and significant mood disorder impaired her capacity to determine and accept needed treatment. He believed that inpatient monitoring was necessary due to Appellant's refusal of a voluntary evaluation and her current level of symptoms. Appellant told Dr. Badeaux that, though she was receiving treatment at Mohave Mental Health, she had no mental health problem or diagnosis. Dr. Badeaux concluded that Appellant was "substantially minimizing the seriousness of her many recent threats and attempts to harm herself." He opined that her ability to recognize reality was impaired and that she could not "make an informed decision regarding treatment at this time." Although the court considered the fact that Appellant had visited Mohave Mental Health Clinic voluntarily, it noted that she had not received appropriate care until she was required to receive inpatient treatment. The court also heard from Appellant's family members, who described her increasingly troubled condition, her threats, and her refusal to submit to a voluntary evaluation. When considered together, there was substantial evidence to support the court's determination that Appellant was unable or unwilling to accept voluntary treatment.

1. We cite the current version of the applicable statute because no revisions material to this decision have since occurred.

¶ 20 Finally, Appellant cites *In re Commitment of an Alleged Mentally Disordered Person, No. MH–1360–1–84,* arguing that the superior court may only order treatment after a finding on the record that she is unwilling or unable to accept voluntary treatment. 145 Ariz. 81, 699 P.2d 1312 (App.1985). In that case, we held that, although the superior court "found mental disorder and danger to self; it did not find unwillingness or inability to accept voluntary treatment." Id. at 82, 699 P.2d at 1313. In the case at bar, the superior court *did* find that Appellant was unable or unwilling to accept voluntary treatment. Although the court did not expressly recite this finding during the hearing itself, it included the finding in the minute entry from the hearing and in the final written order from which Appellant appeals, both of which are part of the record. A trial judge's statement, or lack thereof, will not detract from his express finding of statutory grounds in his formal written order. *Matter of Appeal in Maricopa County, Juvenile Action No. JS–734,* 25 Ariz.App. 333, 339–40, 543 P.2d 454, 460–61 (1975) (holding that trial judge's statement in the transcript that he did not find abandonment did not detract from the formal written order's express finding of abandonment).

## CONCLUSION

¶ 21 Substantial evidence supports the determination that Appellant was unwilling or unable to accept voluntary treatment. The evaluating physicians' documentation complied with statutory requirements. The superior court made the necessary findings. We affirm the order requiring Appellant to undergo involuntary treatment.

CONCURRING: JON W. THOMPSON, Presiding Judge and DONN KESSLER, Judge.